CarutheRS, J.,
delivered the opinion of the Court.
The complainants are creditors of Wm. GL Loughry, and seek to reach his equitable interest in the tract of land' described, for the satisfaction of their debts.
Loughry purchased of Matt Martin on the 31st, December, 1851, his large and valuable tract of land in Bedford county. The consideration vas $47,000, of which $20,000 veré to be paid upon judgments then existing against Martin, in favor of the Bank of Tennessee and others," which were a lien upon the land, and the remaining $27,000 in three equal annual payments of $9,000 each; the first to be due on the 1st of January, 1854. A bond for title was then executed, in a penalty of $100,000. ■ Possession was given immedi *45 ately, and Lougliry used and occupied the place as his own, until early in April, 1854, -when he became desperate in his circumstances, and absconded and left the country. He did not return for two years.
His creditors, which were numerous and large, not being able to find anything else out of which to make their debts, filed these attachment bills, to reach the equitable interest of their debtor in this land. The first bills were filed, and attachments issued, on the 7th of April, 1854, and the others in quick succession. They allege that Loughry had paid a large amount of the consideration, and to that extent has an interest in the land; and that after the payment of Martin, whatever may be due him of the purchase money, they are entitled, as creditors, to the balance, and to ascertain that, they have a right to a decree for the sale of the land, and an account.
Martin resists the prayer of the bills upon two grounds:
1. That the contract of sale was “annulled and rescinded,” by an agreement in writing between him and Loughry, on the 31st of March, 1854, and that upon a settlement of accounts between them on that day, and set forth in said writing, the amount which Loughry had paid him on the land trade, was to be applied to his other 'demands against, and liabilities incurred for, said Loughry. So that whatever interest the latter had in said land, was released and extinguished. -Also, that by another written agreement, more formally drawn up, but to the same effect, dated on the 6th of April, 1854, the said Loughry denuded himself, of any and all interest he may have had in said land.
*46 2. That he has a right to retain the legal title with which he has never parted, not only for the unpaid purchase money, but for all other debts due to him by his vendee, or liabilities incurred for him, before the attachments; and that these debts and liabilities will exceed the amount he has received of the consideration, leaving no interest in Loughry, even if the sale had not been rescinded.
Upon the decision of these questions, the rights of the parties must depend :
The writing of 31st of March, 1854, is severely contested, and boldly charged to be a forgery. Much proof is taken on this point; and among others, Loughry himself is examined as a witness. We pass by the question of competency, which may be doubtful. lie swears most positively, that he never executed or saw such a paper, but admits the signature is genuine. He says, about that time, and before, he was in the habit of giving Martin his name in blank, for the purpose of raising money, &c., but does not remember that particular case, but knows he never executed, or even knew of the existence of the paper in question. His credit is then impeached and sustained, upon his general character. Thirty-odd witnesses are examined, a majority of whom would give him credit, but many would not. Martin, on the other hand, in his answers, relies upon this instrument, and in response to an amended bill for a discovery in relation to it, under a charge that it is fabricated and forged, positively denies it, and states the circumstances under which it was executed with minute detail. He states that he became alarmed at Loughry’s condition; met him at Murfreesboro’ by appointment, *47 ■where he had gone for the purpose of making a deed of trust upon his property to secure his creditors; that they slept in the same room at the hotel, and agreed upon the terms of settlement, and he drew it up and signed it, and. read it over to Loughry, who said it was right, and would- sign it next morning; and that on the next morning, in the bar-room, he presented it to him, and after some explanation he signed it, as he thinks, at a desk or table in the public room. This is, he says, his best recollection, or it may be that Loughry did not sign until they got to Shelbyville, which was the next morning after it is dated, 1st of April. In corroboration of this, James Mullins proves that he was with the parties at Murfreesboro’ at that time, and saw them just before, or after breakfast, in the public room at the hotel, standing together near “ a long writing desk, or something of that sort. Martin had an instrument of writing, and was reading or showing it to Loughry; it was laid down on the desk, and I saw Mr. Loughry have a pen in his hand, and my impression is, that he signed the instrument of writing.” Mr. Wisener, a witness, states, that on the return of Loughry, after an absence of two years, he came to his office to learn something about the state of his business,. and among other things, he told him what Col. Martin said about his article of rescission, and how it was executed, as set out in Martin’s answer; and he understood him to say, that “ it was all right, and that he and Col. Martin would have no difficulty on that subject.”
We think -that the instrument is established by the weight of proof, and that Loughry cannot be credited *48 on that point. There is nothing to overthrow the answer, which is responsive, hut the swearing of a single witness, and he of a doubtful and slender character. But the answer has to sustain it, the very strong circumstances stated by Mullins and by Wisener.
The Chancellor came to the same conclusion, but held, that not being registered before the hills were filed, it could not stand in the way of the attaching creditors. But he held that Martin had a right to satisfaction of all other claims and liabilities against Loughi-y, before he could be compelled to part with the legal title. He ordered the necessary . accounts on that basis, and upon the talcing of the same, it appeared that there was nothing left for the complainants upon the principles adopted, and the bills were dismissed. To the account and report producing this result, many exceptions were filed on both sides, but the Chancellor, in his action upon them, came to the conclusion just stated. - .
The first sentence in the writing thus established, is this: “We, the undersigned, William G. Loughry, and Matt Martin, both of the county of Bedford, and State of Tennessee, have this day mutually agreed to rescind and annul the trade made and entered into by the above named parties, on or about the 1st day of January, 1852, of a tract of land lying in the county of Bedford, District No. 1, on the Garrison Fork of Duck river.”
Loughry then agrees to re-convey the land to Martin as soon as the boundaries can be ascertained from the title bond, which was not then present. The writing then proceeds to adjust the accounts between the *49 parties, by which it is agreed, that what may have been paid by Loughry upon the contract of sale, shall stand against the various amounts paid, and to be paid for him by Martin, and the use of the place for three years, and the overplus, which may be due from Loughry upon settlement, is to be secured by his note at one day after date. By an account taken under the decree of the Chancellor, it turns out -that there was a balance due to Martin upon the basis of this agreement. It seems that the paper executed by Loughry on the 6th of April, was intended, more effectually, to carry out the stipulations of that of the 31st of March.
The question arises upon this state of facts, whether, on the 7th of April, the time of the filing of the first of these bills, there was any interest, legal or equitable, in Loughry, which could be attached. Certainly he had no interest remaining of which he could avail himself. A bill filed by him for a specific performance, it will not be contended, could have been maintained. Even a parol rescission would have been sufficient to resist him. 2 Hum., 119; 3 Hum., 584.
But it is contended that his creditors stand upon higher ground, and as against thenj the rescission could have no effect until proved and registered. We think differently. The registration laws do not apply to such a case. There was no fraud here on the part' of Martin. His object was to extricate himself, by prompt and decisive action, from the embarrassing difficulties with which he found he was surrounded and the ruin which threatened him by his unwarranted confidence in Loughry. His action was not prompted by any motive to benefit Loughry or to injure his creditors, but to save himself. *50 It was a race of.diligence between creditors. As Martin’s involvment with the common debtor arose out of his connection with him in this land, it was surely proper to make himself secure if he could, by regaining the equitable title to it. That he has succeeded in doing so, and thereby defeated the prospect of complainants to make their debts by his loss, is no just ground of complaint on their part. They are struggling to cast the loss upon him, and each are entitled to any legal advantages they can obtain.
If Loughry, in the absence of fraud, could not ask a specific performance against Martin, how can his creditors ? It is only upon that ground that they can claim anything. They ask that the land be sold, and after paying the unpaid purchase money to Martin, the balance shall be appropriated to their debts, and the title divested out of him. The answer is, that the contract of which you demand the performance, has been annulled by the contracting parties, and your debtor, therefore, has no interest under it, and your right must depend upon his; you can only claim through him. The case would of course be otherwise if the rescission were fraudulent — made to defeat creditors, for in that case they would have a right to regard it as a nullity, and do Avhat the party himself could not, because of his complicity in the fraud. But, otherwise, the creditors would occupy no higher ground than the debtor, in this respect.
We cannot see what the registration law has to do with the question. The complainants seek an equity of their debtor in the land; it turns out that he has none, that the contract in which it originated has been rescinded in a legal mode, and the equity has again been *51 united, with the legal estate before they attach it. It is but an illusion — a thing that once was, but now has no existence.
If Loughry had sold his equitable interest to a third person, and the sale had not been registered, a differ- • ent question would arise. That would raise a contest between a purchaser, and creditors of the vendor. ■ But this was a rescission, and not a sale; the release and abandonment of a, past contract, not the making of a new one.
We are aware of no authority that would invalidate this instrument, even as to creditors^ for want of registration. This is decisive of the case, and renders it unnecessary to examine the second ground assumed in relation to the right of Martin to retain the legal' title until all his debts against Loughry, both for the-lands and otherwise, as well as liabilities for him, are paid or secured, in preference to attaching creditors. That question may present some difficulty, and need not be decided until it becomes necessary. *
We come to the conclusion of the Chancellor, though by a different process, and upon other grounds, and without the necessity of taking any accounts.
His decree, dismissing the bills, is affirmed.

As to this question, see the ease of Williams v. Love, reported in this volume, p. 80.